**Tagged Opinion**

ORDERED in the Southern District of Florida on July 16, 2008



John K. Olson, Judge
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

In re:

**SYBIL TODD,**

    Debtor.
_____/

**MARIKA TOLZ,** Chapter 7 Trustee,

    Plaintiff,

vs.

**VINCENT MILLER,**

    Defendant.
_____/

Case No.: 06-16898-BKC-JKO

Chapter 7

Adv. No.: 07-01149-JKO-A

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT MOTION

**THIS MATTER** came before the Court for hearing on March 25, 2008, upon Marika Tolz's (the "Trustee") Motion for Summary Judgment as to Counts I, III, and IV (the "Motion") [DE 42] and Vincent Miller's (the "Defendant") Cross Motion for Summary Judgment (the "Cross Motion") [DE 59]. This case presents the narrow legal question as to whether the transfer of bare legal title of real property to Sybil Todd (the "Debtor") and subsequent transfer of that real property for no consideration constitutes a fraudulent transfer recoverable for the benefit of the estate. Since the Debtor maintained bare legal title of the real property in trust for the original transferee at the time of the transfer, the Debtor essentially received reasonably equivalent value for that transfer. The Court, therefore, must conclude that such a transfer does not constitute a fraudulent transfer.

## JURISDICTION AND VENUE

This is an adversary proceeding seeking to avoid and recover a fraudulent transfer pursuant to 11 U.S.C. §548 and Fla. Stat. §§ 726.105(1) & 726.106(1). I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1) and § 157(b)(2)(H). Venue of this proceeding is properly before the Court pursuant to 28 U.S.C. § 1409.

## FACTS

### 1. Procedural history

The Debtor filed her voluntary Chapter 7 petition on December 27, 2006. *See* [DE 1] in the main bankruptcy case. On March 20, 2007, the Plaintiff filed her Complaint to Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C. § 548 and § 726, Florida Statutes [DE 1]. The Trustee's Motion for summary judgment [DE 42] was filed on November 9, 2007. The Defendant filed a

Response to the Motion on January 9, 2008, and a Memorandum of Law in Support [DE 58] and Cross Motion [DE 59] on January 17, 2008. On January 23, 2008, the Plaintiff filed a reply to the Defendant's Response and Cross Motion. On March 25, 2008, the Court conducted oral arguments on the Motion and Cross Motion.

## 2. Stipulated facts

On or about May 20, 2005, Hubert and Cecelia Miller (the "Millers") executed a deed that transferred the real property located at 1275 NE 94th Street, Miami Shores, FL 33138, better described as Lot 10, Miami Shores Bay View, according to the Plat thereof, as recorded in Plat Book 40, at Page 16, of the Public Records of Miami-Dade County, Florida, (hereinafter referred to as "Real Property") to the Debtor. The Debtor paid nothing, nor did the Millers receive anything in regard to the transfer of the Real Property. The deed was recorded in the Official Records of Miami-Dade County, Florida on May 26, 2005, at Bk 23415, Pg 882.

The Millers transferred the Real Property to the Debtor in an attempt to lower the "loan to value" ratio of Mrs. Miller, so that it would be acceptable to a lender in order to qualify for financing to purchase a check cashing business. It was the intention of the parties to transfer title of the Real Property back to the Millers once the requisite funding was approved by the bank. On or about February 1, 2006, at the direction of the Millers the Debtor executed a deed that transferred the Real Property to the Defendant, Vincent Miller, the Millers' son. The Defendant paid nothing, nor did the Debtor receive anything, in regard to the transfer of the Real Property. The deed was recorded in the Official Records of Miami-Dade County, Florida on May 2, 2006, at Bk 24479, Pg 1969.

At the time of the transfer of the Real Property to the Defendant, Vincent Miller, the Debtor was insolvent. At the time of the transfer to the Defendant, Vincent Miller, the Real Property contained $391,923.15 of equity.

## DISCUSSION

### 1. Legal standard for summary judgment

Under Rule 56 of the Federal Rules of Civil Procedure, incorporated into bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper if the pleadings, deposition, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the Court that there are no genuine issues of material fact that should be decided at trial. *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593-94 (11th Cir. 1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion and resolve all reasonable doubts in that party's favor. See also *Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988).  In the present case there are no genuine issues of material fact, thus, the Motion and Cross Motion are ripe for adjudication as a matter of law.

### 2. Trustee's §548(a)(1)(B) and State Law Fraudulent Conveyance Claim Pursuant to Counts I, III, & IV of the Adversary Complaint.

Count I in the adversary complaint relies upon Section 548 of the Bankruptcy Code.  Section 548 provides a trustee with the ability to avoid transfers made by the debtor with actual intent to defraud his creditors or as alleged here, that constructively defraud his creditors.  This section provides in relevant part that:

> (a) (1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> . . .(B) (I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

11 U.S.C. § 548.  The Trustee must prove that the Debtor (a) within two years, (b) had interest in property, (c) transferred it, (d) received less that reasonably equivalent value for that transfer, and (e) was insolvent on the date of that transfer.  With regard to part (a), (c), and (e) there is no dispute that the Debtor transferred said Real Property within two years of the filing for bankruptcy while she was insolvent at the time of the transfer.  A more in depth discussion is required as to the remaining two parts.

The pertinent factors for constructive fraud under Fla. Stat. § 726.106(1), the statute relied upon in Count IV of the adversary complaint, are identical to those in 11 U.S.C. §548(a)(1)(B). *See*

*In re Moodie*, 362 B.R. 554, n6 (Bankr. S.D. Fla. 2007). Therefore, the section 548(a)(1)(B) analysis the Court will undertake will apply to Count IV as well.

Count III of the adversary complaint relies upon Fla. Sta. § 726.105(1)(b). This section states in relevant part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> . . . (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Sta. § 726.105(1). The crucial factor under this code section in this instance is whether or not the Debtor received reasonably equivalent value for the transfer of the Real Property. This is the identical component to part (d) of the section 548(a)(1)(B) analysis and will be covered during that discussion.

### (a) Debtor's interest in the Real Property

The Debtor held bare legal title to the Real Property as she essentially maintained the property in "trust" for the Millers. This is evidenced by the fact that the Millers "parked" the Real Property with the Debtor in an attempt to make Mrs. Miller a more attractive candidate for financing in a business venture. The transfer was completed without consideration and the Debtor was merely holding legal ownership of the property so as to allow Ms. Miller to perpetrate her scheme to garner financing for the unrelated business venture. The true ownership interest remained with the Millers.

The Debtor thereafter transferred the Real Property to the Defendant, the Millers' son, at the direction of the Millers. It is evident that at no point did the Debtor believe that she was the actual owner of the Real Property.

The concept of a resulting trust is not found in a contract but "[a]rises by implication of law and is founded on the presumed intention of the parties that the one furnishing the money should have the beneficial interest, while the other held the title for convenience or for a collateral purpose." *Frank v. Eeles*, 152 Fla. 869, 13 So. 2d 216, 217-18 (Fla. 1943) (internal quotations and citations omitted). A resulting trust arises, "'where a person furnishes money to purchase property in the name of another, with both parties intending at the time that the legal title be held by the named grantee for the benefit of the unnamed purchaser of the property.'" *Steigman v. Danese*, 502 So. 2d 463, 467 (Fla. 1st DCA 1987) (quoting *Steinhardt v. Steinhardt*, 445 So. 2d 352, 357-58 (Fla. 3d DCA 1984)), disapproved of on other grounds by *Spohr v. Berryman*, 589 So. 2d 225, 228-29 (Fla. 1991), and order vacated by *In re Estate of Danese*, 601 So. 2d 570, 571 (Fla. 1st DCA 1992). In a trust relationship the trust beneficiary possesses an equitable ownership interest in the trust property, while the trustee possesses legal title to the property. See *Axtell v. Coons*, 89 So. 419, 420 (1921). A resulting trust can, indeed, be "founded on the presumed intention of the parties that the one furnishing the money should have the beneficial interest, while the other held the title for convenience or for a collateral purpose." *Eeles*, 13 So. 2d *at* 218 (internal quotations and citations omitted). In this instance the property was already owned by the Millers and then transferred to the Debtor, however, the legal concept is identical and applicable under these facts.

Therefore, a resulting trust existed in favor of the Millers and the Debtor's interest in the Real Property constituted bare legal title. See *Moodie*, 362 B.R. *at* 561-62. "[A]n interest that is

limited in the hands of the debtor is equally limited in the hands of the estate, and therefore, where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title without any equitable interest in the property." *Id.* (citing *Kapila v. Atl. Mortg. & Inv. Corp. (In re Halabi)*, 184 F.3d 1335, 1337 (11th Cir. 1999) (internal quotations omitted).

      (b) <u>The transfer of the Real Property did not result in the Debtor receiving less then reasonably equivalent value</u>

Since the Debtor held only bare legal title to the Real Property, the value of that interest in the property was essentially zero. There was no consideration for the initial transfer between the Millers and the Debtor. Thus, the subsequent transfer from the Debtor to the Defendant, although no consideration was exchanged, constituted for the Debtor an economic status quo. A valueless asset transferred for no consideration neither hurts nor benefits the estate. *See Moodie*, 362 B.R. at 562. If no value was lost in the transfer between the Debtor and the Defendant, it is inherently the case that the Debtor did not receive less than equivalent value. *Id.* As a result, the section 548(a)(1)(B), Florida Statute section 725.106(1) and Florida Statute section 725.105(1)(b) claims fail as to the less than reasonably equivalent value element. Ergo, summary judgment as to Counts I, III, IV must be entered in favor of the Defendant.

### 3. Unclean Hands Argument

The Trustee argues that "the creation of a resulting trust is an equitable remedy," therefore, "the Court should not find that a resulting trust existed, as the actual party requesting the creation of the resulting trust and the party enjoying the benefit of the equitable remedy . . .are coming before the Court with 'unclean hands'" Trustee's Reply to The Cross Motion at ¶¶ 17 &21.

This Court has previously discussed the concept of "unclean hands" and the implications and application of this theory. *See In re Delfino*, 351 B.R. 786, 798-790 (Bankr. S.D. Fla. 2006).

As reiterated now, the rule that one who comes into equity must come with clean hands "expresses rather a principle of inaction than one of action. It means that equity will refuse its aid in any manner to one seeking its active interposition if he has been guilty either of illegal or inequitable conduct respecting the subject-matter of the litigation." *Carmen v. Fox Film Corporation,* 269 Fed. 928, 932 (2d Cir. 1920), *cert. denied,* 255 U.S. 569 (1921) (Internal citations omitted). The principle is stated in *Pomeroy's Equity Jurisprudence* (3d Ed.), Vol. 1, § 398, as follows:

> Whatever may be the strictly accurate theory concerning the nature of equitable interference, the principle was established from the earliest days that, while the court in chancery could interpose and compel a defendant to comply with the dictates of conscience and good faith with regard to matters outside of the strict rules of the law, or even in contradiction to those rules, while it could act upon the conscience of a defendant and force him to do right and justice, it would never thus interfere on behalf of a plaintiff whose own conduct in connection with the same matter or transaction had been unconscionable or unjust, or marked by a want of good faith, or had violated any of the principles of equity and righteous dealing which it is the purpose of the jurisdiction to sustain. While a court of equity endeavors to promote and enforce justice, good faith, uprightness, fairness, and conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from the litigant parties who come before it as plaintiffs or actors in such controversies.

The Court understands that the impetus behind the transfer of the Real Property was to manipulate Ms. Miller's financials so as to lure the Millers' banks into making a more beneficial loan. The problem here is not that the Millers acted in bad faith and have "unclean hands,"[1] it is that the Millers are not seeking active intervention by the Court. I would be less likely to assist the Millers in reclaiming their ownership of the Real Property, based on equitable principles, if, for example, the Debtor still maintained legal ownership of the property at the time of filing for

---

[1] It should be pointed out that the Debtor herself partook in, or at least was the vessel for, the hiding of this asset. I make no judgment as to her true culpability, as the record does not demonstrate to what extent the Debtor had knowledge of the nefarious underpinnings resulting in the need for the transfer.

bankruptcy. However, that is not the issue here. In this instance the Trustee is petitioning the Court to undo a transfer of property in which the Debtor had no economic interest. That is not to say that I condone the Millers' actions. But I am not willing to subject the Millers to a gross and inequitable transfer of property to the control of the Trustee, which would constitute a windfall for the benefit of the Debtor's estate at the expense of the Millers. Since the Millers are not looking to the Court for affirmative relief, the doctrine of "unclean hands" is inapplicable under these facts.

### 4. Count II of the Adversary Complaint

Count II of the adversary complaint relies upon Fla. Sta. § 726.105(1)(a). This section states in relevant part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor . . .

Fla. Sta. § 726.105(1). As the Court has explained above, the Debtor held bare legal title to the Real Property and had a valueless economic interest in that property. Thus, a fraudulent transfer claim, based on intentional fraud, is illusory. That is, you can not intentionally defraud your creditors by transferring something in which you have no economic interest. The Debtor's transfer of the Real Property to the Millers' son resulted in no change as to the value of the Debtor's estate.[2] It is for these reasons that summary judgment as to Count II must be granted in favor of the Defendant.

Accordingly, it is **ORDERED** that:

1. Plaintiffs Motion is **DENIED** in full.

---

[2] For a more in depth analysis of an intentional fraud claim and why it is inapplicable under these factual circumstances, *see Moodie*, 362 B.R. at 562-564.

    2. Defendant's Cross Motion is **GRANTED** in full.

    3. This adversary case, 07-01149-JKO-A, is **DISMISSED**.

# # #

Copies furnished to:

Brett A Elam, Esq
2076 Chagall Cir
West Palm Beach, FL 33409

Mark A Dienstag, Esq
9200 S Dadeland Blvd #509
Miami, FL 33156

Mr. Dienstag is directed to serve a conformed copy of this order on all interested parties not listed above.